The next case is 411-0459, 411-1094, People v. Andrew Coe. Show the appearance of the appellant Daryl Omiyev, D.R. Hisa. And appearance of Appalachian Anastasia Brooks. Mr. Omiyev, you may proceed. Good afternoon, your honors. You may please the court. I'm Daryl Omiyev and I represent the appellant, Mr. Andrew Coe. My briefs raise numerous reasons that this court should remand for a new evidentiary hearing with new post-conviction counsel. Though the court below initially appointed counsel, Mr. Coe essentially was forced to proceed pro se to a third-stage evidentiary hearing in this case. The limitations of being an indigent, imprisoned non-lawyer prevented him from fully presenting his claims to the court. For example, he was unable to subpoena documents to properly prepare witnesses who needed their recollections refreshed concerning events that had occurred five years before the hearing. He was unable to timely amend his petition to include extra affidavits, including the affidavit of the actual offender, Mr. Brian Smith. He was unable to successfully compel the testimony of multiple people who provided affidavits in support of his petitions but were not present to testify at the evidentiary hearing in this case. That includes Mr. Smith, who provided an affidavit indicating that he was the actual offender who sold the drugs in question. That includes Nicole Hale and Lynette Hunt, who provided affidavits indicating that he was in Chicago at the time of the offense. He was unable to get current addresses and achieve service or process of them. It's probably not a coincidence that he was an indigent prisoner at the time. It's much easier to achieve process, get current addresses, either with the assistance of an attorney, or if you yourself are not in prison at the time. And also Dennis Compton provided an alibi affidavit. He was in IDOC custody at the time the petition was filed. By the time the evidentiary hearing was held in this case, he had been released from custody. Mr. Coey asked the judge how he could compel the presence of a person in IDOC custody. He was about to be released. The judge told him that while he was on MSR, IDOC would bring him to court for the evidentiary hearing, but that didn't happen. So we're missing five or six witnesses who provided affidavits but didn't testify at the evidentiary hearing, which it's not a coincidence that is a result of him not being represented by counsel. The Circuit Court's denial of his petition for post-conviction relief is a direct result of this inadequate presentation of evidence at the evidentiary hearing. The court's mis-evaluation of child counsel's inconclusive testimony, which for the most part indicated that he didn't really remember the case, again, it happened five years earlier. And also the court's improper consideration of counsel's performance in previous cases before that same judge, which is directly contrary to Illinois Supreme Court's decision in People v. Steudle. The extent of the post-conviction evidence is significant in this case because Mr. Covey's conviction, the specific conviction at issuing this post-conviction petition, rests on the uncorroborated testimony of a confidential informant who, at the time he agreed to cooperate with the police, had been arrested on a drug charge, had a pending drug charge, had prior drug charges, and he agreed to cooperate with the police to help save himself from future terms, years in the Department of Corrections. The state presented no other evidence identifying Mr. Covey in connection with this particular offense that's at issue in this petition. Turning to some of the specific arguments raised in my briefs, my point 1A about the Steudle case, this case is remarkably similar in terms of the post-conviction judge's findings with respect to child counsel's performance before that judge in previous cases. In People v. Steudle, the circuit court found that petitioner's child counsel had, quote, appeared before the court on numerous other occasions involving both criminal and civil cases and has effectively represented clients. The court went on to cite specific examples of that. This case is actually remarkably similar. Based on the, at the outset, the circuit court's findings began, let me first observe that the court can in these instances take into account the court's familiarity with particular witnesses based on that person being an officer of the court. That's incorrect. The court continues, Mr. Smith appeared before this court literally hundreds of times during the space of two or three years. When I was assigned to the felony division full-time, the court always found Mr. Smith to be a person of great moral truthful and honest. I would submit that that's virtually identical to what the trial court does. The circuit court did in People v. Steudle. The Illinois Supreme Court in that case said that's improper fact finding on the part of the judge who's looking at matters outside of the record have to focus on the testimony presented to him at the evidentiary hearing. As the Supreme Court said in that case, deliberations of the court must necessarily be limited to the record before it. The judge's statements indicate that he relied on personal knowledge of defense counsel's performance in previous cases to determine his competency in the instance case. In doing so, the judge considered information outside of the record, which is prejudicial error. This case is on all fours with Steudle. It's prejudicial error in this case as well. For that reason, this court should demand for a new evidentiary hearing. What, if any, notice, or like a better way to put it, can a trial judge take, is permitted to take, with regard to an attorney's performance in this courtroom? In the context of a post-conviction evidentiary hearing, under Steudle, none. Basically, that's outside the record. The court's supposed to consider the evidence from the stand, both the positive evidence and any kind of credibility limitations. In this case, there were actually several credibility limitations. The trial attorney was very frank. This was not a matter of being defensive and coming in and denying everything. He was very honest. He said, this case was five years ago. I don't really remember. On a scale of one to ten, I'd rate my recollection as a five. He answered 14 times some version of, I don't recall, I don't remember. Remember, Mr. Coyd represented himself, so Mr. Coyd directly posed questions to the trial attorney, and his answer to those questions were, frankly, I don't remember. You may have told me about these witnesses. I don't know. I did review my file several months previous, but I don't remember what it said. So, based on the record itself, as opposed to going outside of the record and relying on improper factors under stitle, the court's determination was erroneous. Very briefly, with respect to the motion to withdraw the post-conviction attorney and replace him with a new attorney, the court did not exercise any discretion in that instance. It just simply found that it did not have discretion, and as a knee-jerk reaction, told Mr. Coyd, you only have three options. You can keep the attorney you have now, who's not adequately representing you. You could pay a private attorney, which he attempted to do, but he doesn't have any money. There's evidence on the record that he tried to contact attorneys he would represent for free. He was unable to do so, understandably. Or he could represent himself without any analysis of the actual issues brought to the court in the motion to withdraw. So, for that additional reason, this case should be remanded for a new evidentiary hearing with new appointed counsel, and actually the relief in People v. Stitle is a new circuit judge to conduct the new hearing. If your honors have no further questions, thank you. Okay. Thank you, counsel. Ms. Brooks? May it please the court? Counsel. And counsel, my name is Anastasia Brooks. I represent the people in this case. First of all, I'd like to talk about the Stitle issue. The defendant claims that Stitle is on all fours and remarkably similar, but as the state's brief points out, citing the cases of Ripito and Hamilton, there is a major distinction, I mean, a dispositive distinction between this case and Stitle. And Stitle is a case in which no evidentiary hearing was held. The issue there was whether counsel was confident. The trial court in Stitle had cited the counsel's previous performance in prior cases in order to deny, I'm sorry, in order to dismiss the post-conviction claim of ineffective assistance of counsel. In this case, it's different, in which the counsel was a witness who appeared before the court in an evidentiary hearing context and then cited counsel's prior appearances before the court in the context of remarking on that witness's credibility. So the case is not at all similar to Stitle, and the defendant does not cite any relevance on point authority to show that the judge was improperly considering the witness's credibility based on contacts that the judge had with the counsel outside of the immediate case that was being considered. Well, what about the question I asked Mr. Oman, that essentially the trial court shouldn't be bringing anything into the courtroom on evaluating the evidence other than what the evidence in that courtroom has been, suggesting that it's just improper for a judge to say, hey, I know this guy, I've seen him a lot of experiences in front of me, and considering that as part of it, when it's not something that happened in the courtroom involving this defendant, and this defendant is, if it's a factor of the prior effect's assessment of it all, he's being denied due process in effect, is he not? Denied due process because the judge is, the question is because the judge is considering facts outside the record? Yes. I'm not sure that's... This is kind of like, as we discussed in our earlier case, this is extraneous information, not only from the judge's point of view. I mean, if it had been a case where a serious issue was whether or not a particular gun worked in a certain fashion, and the defendant was asserting self-defense, and the judge says, no, you know, I went on the internet last night, and I checked all this out, and it turns out that there's a lot of reports about this gun, and the story the defendant said about how it just happened this way, that won't fly. I don't think we'd have any trouble saying, you know, judge, that's not what you do. You're supposed to be deciding this case, if you're prior effect, based solely upon the evidence that has been presented in this courtroom, not extraneous stuff you brought in. But I think your Honor's hypothetical refers to actual facts that are gleaned from outside investigation. Weren't these actual facts from an outside, if not investigation, that the judge brought into the courtroom, unbeknownst to apparently the parties, particularly the defendant, whose case it was, hey, you may not have known this, but you know that guy? I know him well, and he's really a prince. Well, your Honor, in my research for other cases, I don't believe it was cited in the brief, but I believe in my own legal research, I might have come across a case where there is a prohibition, a due process prohibition, on the judge conducting an independent investigation of the facts. But I don't believe that this case has this sort of similarity, in terms of this is not involving actual facts that are pertaining to the offense or incident in question. Well, isn't that pretty restricted in the sense that the fact at issue, apparently, is one of credibility, and in giving an A-plus grade to the lawyer for the judge's, the prior effect's, credibility determination, that was based upon things that never occurred in this courtroom, and this defendant never heard anything about? Well, the argument is essentially that the judge can consider a lot more than just simply what the witness is coming out of the witness's mouth, in terms of evaluating that witness's credibility. So... Well, can it be on the basis of... That's, from the judge's perspective, sitting on the bench observing the defendant testify, not based on something else, right? Well, the judge's awareness of prior contacts with the witness, there's no case cited in the defense brief that says that that's improper. So the cital case does not say that this particular consideration, with respect to credibility, is an improper consideration by a judge, sitting as a prior fact. Shouldn't it be an improper consideration? I do not... Well, I mean, as is... Well, I understand, and you do a very thorough job in research, but I'm just stepping back for a moment and saying... The judge has decided this case based upon, or a serious factor based upon, his experience as a judge, seeing this lawyer in front of him. How about, you know, I've been playing cards with this guy twice a month for the last several years, and he's a prince, he's an honest guy, I've known him well, we've been good friends. How about that? Well, that's a different situation in the sense that here the context is inside the courtroom. So it's different than saying that they're golf partners or something outside the courtroom. Well, but the one thing that's the same in both is the defendant knows nothing about this, isn't there to hear any of it, and isn't there to evaluate what might have happened. And it's a little troubling. I mean, it seems to me, to use the term we used in that earlier case, extraneous information. This is extraneous in the sense of it's extraneous to this case on trial. It's not an extraneous fact. I mean, it's not a relevant fact in terms of what's being disputed about whether the witness had contacted alibi witnesses, for example, the counsel. That's not a fact that the judge went out and found out on his or her own. So is it your position that even if it's true that the judge considered the credibility factors of defense counsel, what was his name again? It was Tracy Smith. Tracy Smith. That it really didn't matter because Tracy Smith's credibility at the PC stage wasn't an issue? Well, counsel Smith's credibility was an issue, but essentially it was a situation where a counsel could have found Tracy Smith credible for reasons, and did in fact find him credible for reasons apart from his prior contacts with him in court, claiming that how he testified only to the extent it was a recollection. That seemed to be incredible. It struck the court as being credible. And also, the judge also found the defense witnesses not to be credible. So there are other reasons to sustain judgments, even if this court believes that the trial court may have – if this court rules that the trial court improperly commented on that issue of credibility, there are still other reasons to sustain the judgment, and it was not prejudicial under the circumstances. So the primary issue is whether the denial of the evidence of the post-conviction petition following the evidentiary hearing was manifestly erroneous. And apart from this issue on the judge's – this title issue, if this were just simply a case of conflicting witnesses and credibility, then this court would have to affirm, because this is shown when there is record support for the trial court's judgment, and it's merely a conflict in witnesses' testimony and a question of credibility. It's not for this court as a court of review. The trier of facts is the one in a superior position to judge those issues, so therefore this court should defer and affirm on that basis. Also, with respect to the claim that Counsel Smith had given inconclusive testimony because he lacked a lot of recollection, well, essentially there were several times in which he did not recall specific things, but there were many important things that he had said that he did recall, and the most important is the fact that he terminated his investigation after contacting two of the alibi witnesses that were offered up by the defendant. And they were unable to verify that the defendant was, in fact, in Chicago on February 15th of Wednesday, 2006, instead informing the defense attorney that he had visited for the weekend but had left before noon on Monday. So that gives the counsel who can then, at that point, reasonably decide to terminate the investigation into the defendant's alleged alibi,  the defendant does not have a good alibi, and scarce resources should be probably allocated elsewhere in terms of investigating a possible defense. And it's not the law under Strickland that the defense attorney must, in fact, interview every single possible alibi witness offered by the defendant before concluding that this would not be a fruitful line of investigation to keep pursuing. So for those reasons, this case is not at all similar to Stidle, and the evidence supported the trial court's decision to deny post-conviction relief. With respect to discretion, the issue of substituting counsel, the defendant characterized this as a knee-jerk reaction with no analysis. What happened was the trial court did rule, though, that there was no basis upon which to remove Davis, that's W. Keith Davis, as the appointed attorney. So essentially there was consideration. The defendant filed a lengthy pleading with several allegations about Mr. Davis, his appointed attorney, as to reasons why he wanted to replace him. And the trial court looked at that and then decided, no, this is not a good reason. So there is a consideration there, an exercise of discretion. It is not a reflexive. If there was language saying that the trial court had no discretion at that point, it would be because there was no showing of a reason to disqualify and replace. Didn't the court indicate something like, I don't have the authority to do this? Essentially that could be read in the sense that the judge has no authority in light of the fact that the defendant has not shown a basis for replacing him. So if the defendant does not make a proper showing as to why his attorney should be replaced, then the judge doesn't have the authority to tell the public defender's office. What was lacking in the showing the defendant made in this case, given what Davis had to say about his post-conviction petition? Well, the defendant's complaint appeared to be that his counsel was working for the prosecution, but really what Davis was doing was merely explaining why he was not preserving and was, in fact, abandoning most of, in fact, all but one of the defendant's pro se claims, which dealt with the ineffective assistance of Tracy Smith for failing to investigate the alibi claim. That's what went to the evidentiary hearing, because that was a potentially meritorious claim, at least enough to get an evidentiary hearing on. So the other issues counsel reasonably deemed to be frivolous, and under the Greer case, the counsel can then... That was a case that dealt with a frivolous petition through and through. So counsel then has a duty to withdraw, and in order to withdraw has to explain why they're withdrawing and why they deemed the petition to be frivolous. This is a different situation in the sense that counsel can proceed on one issue that's not frivolous. Isn't it pretty clear that Attorney Smith is confused about the evidence against the defendant? He talks about there being multiple eyewitnesses and videotape, and does he say audiotape too, or the recordings of you? Yes, Your Honor. At one point there was a confusion that arose because there were, in fact, two separate incidents that had been involved. And it may have been counsel Davis's opinion at one point that the evidence against the defendant in this particular incident was corroborated. But the defendant can then write another letter back to his counsel explaining that counsel was in fact mistaken and this was a different incident than the one that dealt with the solicitation. So if that confusion is resolved, then that's no longer... Was it resolved? In the record, does it show that it's resolved? I don't think it was... To the defendant's satisfaction, the defendant... Wouldn't that be pretty scary to a defendant to have a lawyer tell him how strong a case was against him because they had multiple eyewitnesses and video of him doing it? In fact, that's not the case. I mean, if I hired the guy to bail money, I'd fire him, right? Well, you could fire him, I understand, if you had the choice. But you could also simply say, no, counsel, you're mistaken, and let me explain it, and after five minutes, then you can sit down with him and resolve that without having to just simply decide to get a different lawyer. But if you like this lawyer for other reasons or whatever, you wouldn't necessarily have to fire him. You're disliking him for other reasons. I understand, but... Subjective reasons that maybe don't count, but you're thinking to yourself, I don't think this guy's too good, and then you get the letter from him on top of it. And you say, my God, what... Your Honor, I'm not trying to argue that he wouldn't have decided to fire him, but it did damage his confidence in him, but that doesn't mean that that was a reason to then get a new appointment to counsel. Essentially, it was a misunderstanding that could have been resolved, and it didn't have to mean that the court had to appoint a new lawyer for him. And so essentially, his belief was that because counsel thought that almost all of his claims were frivolous, that that meant that his lawyer was working for the other side. That's not a good reason for firing this attorney either, or for requesting a new lawyer, or requiring the trial court to appoint a new lawyer for him. So in any event, the proper remedy, even if the defendant shows that this was a reflexive denial, would be under the Martel v. Clair case, is to remand for the trial court to exercise the discretion not to reverse it and remand it for a new evidentiary hearing, but simply allow the trial court to decide whether a substitute counsel should have been appointed at that time. That would be the resolution of that particular issue if his court were to agree with the defendant's argument. In terms of whether, the defendant did have limits. He was an indigent prisoner, and the state understands that, but he also had a choice. He had a choice to keep counsel Davis, who was doing a fine job, not a poor job, as the defendant claims. And he decided not to do that. He decided to be his own attorney. And if that's an unwise decision, that's not the state's fault. That's his fault for making that choice. With respect to leave to file, under the Snow case, the evidence is not newly discovered for the actual innocence argument, because there's no showing that Bryant Smith, nicknamed Rio, was not available during the course of the first post-conviction proceedings. Even if he wasn't available, the defendant would have known that he was, in fact, the person who was the one that this other witness had claimed to have delivered the cocaine, and not the defendant. And under the cause and prejudice test, this case is not controlled by Martinez v. Bryant's exception for what constitutes cause. The general rules and attorney's negligence in a post-conviction proceeding does not establish cause. And the only exception recognized by Martinez v. Bryant is that as an initial review collateral proceeding, if the defendant has a claim of ineffective assistance of counsel at trial. This is not an ineffective assistance of counsel at trial argument in the successive post-conviction proceeding. Instead, it's just simply a claim that his post-conviction attorney, W. Keith Davis, was incompetent. And that is not cause under the current law for granting leave to file a successive post-conviction. So that's the state's primary argument. I'm still willing to entertain further questions. Thank you. Thank you very much. Okay. Mr. Allman, any rebuttal, sir? I have no rebuttal. Okay. If you may please, the court, I have only two very brief points on rebuttal. Counsel argued that the court's statement on carrying on the motion to withdraw could be read as that the defendant did not make a proper showing that there was any sort of conflict. Let me just quote what the court said. I don't have the authority, nor does the law, allow me to substitute or replace Mr. Davis as court-appointed counsel without any cost to you. This isn't the substantive hearing that's being held upon your petition on today's date. That's on October 26, 2009. Again, Mr. Coyer revisited the issue of July 27, 2010. The court again refused to appoint substitute counsel, saying, quote, It's not my determination to make. It's the public defender's determination as to whether you're going to get a new attorney or not. So I don't believe that could be fairly read any other way except that the court mistakenly believed there was no authority to grant the motion to withdraw. And under People v. Walker, where there's no exercise of discretion, this court must reverse. My second point is that counsel argued that at some point there was confusion between defense counsel and Mr. Coyer at the post-conviction stage. I agree that defense counsel was very much confused initially when he wrote the letter, but I submit that the confusion actually continued up until he filed the amended petition, having attached to that petition a page of transcript from one of the cases that did not pertain to the drug offense at issue in this case. So to the extent you can... Say that again. Well, part of the issue with the initial confusion is that there's two separate drug cases, one of which was reversed outright by this Court on Drug Appeal, and the post-conviction counsel kept referring to the evidence in that case as if it had any bearing on the petition that's at issue before this Court now, which it does not. That confusion, as counsel calls it, continues to the filing of the amended petition by counsel where he attaches, I would characterize it as kind of seven pages of career motion, one page of an actual amendment. But attached to that is this Court's ruling under a case where one page of transcript from the other drug case, the case that is not at issue in this petition. So I'll agree counsel was confused at the outset, but the record in this case shows that counsel continued to be confused right up until the motion was drawn. Thank you, Your Honor. On the issue of what the judge said about Mr. Smith, if he had simply said, assessing the facts as I find them and the credibility of the witnesses, I think that was a reasonable strategic choice, that's the end of that issue, isn't it? That's the proper role of a judge in a third-stage post-conviction hearing is to listen to the defense attorney. Even if he's thinking, I usually believe Tracy because he thinks that, but he doesn't speak it. Well, I'm afraid there's no way of governing what's in the mind of a fact finder, and that applies to jurors as well as judges, but this Court can only rule based on this record, which is remarkably similar to this case. Thank you. Thank you, counsel.